FORST, J.,
dissenting.
The majority opinion is rooted in a perceived frustration on the part of both appellate and trial courts with these types of dependency cases. For the most part, I concur with the majority opinion’s analysis and conclusions. However, that opinion fails to adequately address one of the issues presented in this specific case. Here, the petitioner on behalf of the Child presented evidence of a prima facie case of dependency under section 39.01(15)(e), Florida Statutes (2014). The trial court failed to address this specific provision in its decision, and so I would have remanded for a determination as to this claim. On the record before this court, I cannot affirm the trial court’s decision. As such, I respectfully dissent.
The petition filed on behalf of the Child alleges that he was forced to leave his home by his mother when he turned seventeen years old. When trying to illegally immigrate to the United States, the Child was picked up by immigration officials and later released to his uncle’s care in Palm Beach County.
Less than ten months later, about two and a half months before the Child’s eighteenth birthday, a private petition for adjudication of dependency was filed on his behalf. The petition alleged the Child’s father abandoned him before birth and that his mother had been neglecting him since he was twelve years old because she could not sufficiently provide him food and clothing. The petition sought a declaration of dependency on two grounds: (1) the mother had abandoned the Child because she kicked him out of her home when he turned seventeen years old pursuant to section 39.01(15)(a), and (2) the Child is without a “parent or legal custodians capable of providing supervision and care” pursuant to section 39.01(15)(e).
An evidentiary hearing was held before the trial court on the petition. The Child and his uncle were present and sworn in to testify. The Child testified about his background and that he lived in Guatemala with his mother and grandmother, but his mother kicked him out of the home when he turned seventeen years old because there was not enough food or water. The Child currently is living with his uncle and going to school. That was all the testimony that was taken. No other evidence was presented, and the Child was not questioned as to the details of the Child being “kicked out” or how he financed his trip to the United States.
In a two-page final order denying the petition, the trial court presented the facts as found in the petition and from the Child’s testimony, nowhere indicating that his testimony or averments set forth in the petition were rejected or found not credible. The trial court correctly asserted, citing case law from this Court, that the Child’s motivations for seeking an adjudication of dependency are not to be considered. See F.L.M. v. Dep’t of Children & Families, 912 So.2d 1264, 1269 (Fla. 4th DCA 2005). The trial court next analyzed other case law from this Court regarding whether the Child meets the statutory definition of abandonment. In concluding that the Child does not meet the definition *1252 of abandonment, the trial court emphasized that the Child was not abandoned because he “is residing with his Uncle, against whom there are no allegations of abandonment, abuse, or neglect.” The trial court made no findings that the uncle is the Child’s “legal custodian,” and it failed to address the petition’s other grounds for dependency found in section 39.01(15)(e)— that the Child is without a parent or legal custodian capable of providing supervision and care. Similarly, the one case relied upon by the trial court in reaching its decision, S.H. v. Dep’t of Children & Families, 880 So.2d 1279 (Fla. 4th DCA 2004), does not address section 39.01(15)(e).
The majority opinion notes that, “[alb-sent from [the] definition [of a ‘dependent child’] is a requirement that the alleged abuse or neglect occur within a specified period of time prior to the filing of the petition.” However, in the instant case, while the petition explains that the Child allegedly was neglected by his mother beginning when he was twelve years old, the grounds for dependency relied upon in the petition were for events occurring, at most, ten months before the petition came before the trial court, and not for the alleged neglect of his earlier childhood. The Child alleges abandonment upon his mother forcing him to leave her home when he turned seventeen years old, and then the petition was heard before the court two and a half months before the Child’s eighteenth birthday. Additionally, the other grounds alleged that the Child is currently without a parent or legal custodian capable of providing supervision and care. Contrary to the majority’s example, this is far from being a situation where there is an isolated incident of abuse occurring fifteen years ago, and a reversal of this case would not require this court “to employ such an expansive interpretation and rote application of section 39.01(15)(a).”
On the case’s merits, I agree with the majority that the Child is not abandoned where the uncle qualifies as a caregiver by virtue of the immigration authorities releasing him to the uncle and there are no allegations of abuse, abandonment, or neglect by the uncle. See § 39.01(1), (10), (47), Fla. Stat. However, where I diverge from the majority’s line of thinking is the notion that, because the uncle (who was neither a parent nor “legal custodian” of the Child) is capable of providing supervision and care to the Child, there is no need to address dependency under section 39.01(15)(e). Although the majority opinion does recognize section 39.01(15)(e) as a basis for finding dependency, it fails to recognize it as the independent basis that it is. See In re Y.V., 160 So.3d 576, 578 (Fla. 1st DCA 2015). Section 39.01(15)(e) specifically provides that a child is “dependent” upon a finding that the child has “no parent or legal custodians capable of providing supervision and care.” § 39.019(15)(e), Fla. Stat. As mentioned above, the trial court made no finding that the uncle is a “legal custodian,” which involves a legal status conveyed by a court, § 39.01(34), Fla. Stat., and therefore the uncle’s care for the Child would not automatically rule out a finding of dependency under section 39.01(15)(e), contrary to what the majority suggests with its creation of a “presumption” upon a finding of no abandonment, abuse, or neglect by the “caregiver” (in this case, the Child’s uncle).
Therefore, as no legal father has been established, the logical analysis would be focused on whether the Child’s mother is capable of providing supervision and care. This issue was raised in the petition, but not addressed by the trial court or the majority opinion. The limited evidence presented to the trial court establishes that she is not. While the mother may be capable of supervision, the fact, established by the testimony of the Child, that she was *1253 not able to provide food and water to the Child is evidence of the mother’s demonstrated lack of capability to care for the Child. The majority opinion fails to acknowledge this unrebutted allegation. A finding of dependency under section 39.01(15)(e) has previously been found under circumstances where a mother could not financially provide basic necessities for a child, such as food and water. See C.D. v. Dep’t of Children & Families, 816 So.2d 1229, 1230 (Fla. 5th DCA 2002). Additionally, there was no evidence presented in the instant case that the mother otherwise provided for the care of the Child by giving her “full permission” to the uncle to care for him, as the majority opinion asserts. As such, with his testimony, the Child established a prima facie case for dependency under section 39.01(15)(e). See In re Y.V., 160 So.3d at 579 (concluding that a prima facie case under section 39.01(15)(e) is possible even with a child who has “locatable, living parents” and “a responsible adult [who is not a parent or legal custodian] is caring for him on a voluntary basis”).
In light of this prima facie case, the trial court is in the position to act as the fact-finder, make decisions to accept or reject testimony, and then make its ruling. The final order of the trial court in this case does not show that the trial court rejected the Child’s testimony, but rather that the court found no basis for dependency even in light of accepting the Child’s testimony because of the uncle caring for the Child and having no allegations of abuse, abandonment, or neglect against him. As mentioned above, the trial court simply failed to address the other basis for dependency-section 39.01(15)(e)—where the prima facie case existed.
I agree with the majority opinion that judges should “avoid being nothing more than a ‘rubber-stamp’ ” in either routinely granting or, as in the case at hand, denying these requests. Perhaps the Child’s testimony was “clearly incredible or unreliable.” However, the trial court did not reject this testimony, and the Child’s testimony establishes the prima facie case. Thus, the proper course of action is either a reversal or, at least, a remand for the trial court to specifically address section 39.01(15)(e). As the record as developed below doefe not support affirmance with respect to this ground for dependency set forth in that subsection, I respectfully dissent.