[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2011
JOHN LEY
CLERK

_____

No. 10-11840

_____

D.C. Docket No. 4:06-cv-00486-RH

ERIC S. BRANCH,

Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 21, 2011)

Before CARNES, HULL and WILSON, Circuit Judges.

CARNES, Circuit Judge:

Eric Scott Branch was convicted and sentenced to death for the murder of

Susan Morris, a young college student, whom he robbed and savagely beat and

stomped and strangled and sexually assaulted and then left her nude body in the woods. See Branch v. State, 685 So. 2d 1250, 1251 (Fla. 1996) (Branch I), cert. denied, 520 U.S. 1218 (1997). Branch's conviction and sentence were affirmed on direct appeal. Id. State collateral relief was denied and that denial was affirmed. Branch v. State, 952 So. 2d 470 (2006).

The district court denied federal habeas relief, Branch v. McDonough, No. 4:06cv486-RH (N.D. Fla. Mar. 30, 2010) (order denying petition), but granted a certificate of appealability on one issue: "whether Mr. Branch is entitled to relief based on the prosecutor's references to Mr. Branch's failure to disclose his version of the facts prior to his testimony at the trial," Branch v. McDonough, No. 4:06cv486-RH (N.D. Fla. Mar. 30, 2010) (order granting certificate of appealability).

Branch contends that the prosecutor violated his constitutional rights under Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240 (1976), by cross-examining him about the fact that he had not told anyone before trial the story that he was telling on the witness stand in his own defense, and by arguing that fact to the jury. Branch raised this claim, or one similar enough to it, on direct appeal, and the Florida Supreme Court rejected that claim without discussion. See Branch I, 685 So. 2d at 1252 n.3, 1253

As the district court correctly noted, and Branch does not dispute, the Florida Supreme Court's summary rejection of that claim is due deference under 28 U.S.C. § 2254(d).  See Harrington v. Richter, 131 S.Ct. 770, 784–85 (2011); Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011).  Under § 2254(d)(1) the question is whether the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Because the Florida Supreme Court decision was summary in nature, Branch "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for [its] decision." Cullen, 131 S.Ct. at 1402 (quoting Richter, 131 S.Ct. at 786).  The duty of a federal habeas court in these circumstances is clear and was clearly restated by the Supreme Court earlier this month:  "[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. (quoting Richter, 131 S.Ct. at 786).

Not only could fairminded jurists disagree with Branch's claim that the prosecutor's questions and argument violated his constitutional rights as

3

established in the <u>Doyle</u> decision, no fairminded jurist could agree with his claim that there was a <u>Doyle</u> violation under the actual facts of this case. The <u>Doyle</u> decision applies when a prosecutor comments on a defendant's silence after he has been advised of his <u>Miranda</u> rights by a law enforcement officer. <u>Doyle</u>, 426 U.S. at 617–18, 96 S.Ct. at 2244–45. The decision is based on the unfairness of an agent of the state advising the defendant that he has the right to remain silent and the state then using the defendant's post-advice, pre-trial silence against the defendant. <u>Id.</u>

The Supreme Court has squarely held, however, that <u>Doyle</u> does not apply, and a defendant's constitutional rights are not violated, when a prosecutor comments on the pretrial silence of a defendant before he was advised of his <u>Miranda</u> rights by a law enforcement officer or other agent of the state. That is exactly what the Court held in <u>Fletcher v. Weir</u>, 455 U.S. 603, 102 S.Ct. 1309, (1982), limiting <u>Doyle</u> to cases "where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him," <u>Id.</u> at 606, 102 S.Ct. at 1311. The Court expressly stated in that decision that "[i]n the absence of the sort of affirmative assurances embodied in the <u>Miranda</u> warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the

4

stand." Id. at 607, 102 S.Ct. at 1312; accord United States v. O'Keefe, 461 F.3d 1338, 1346 (11th Cir. 2006) (explaining that "due process is not violated by the use for impeachment purposes of a defendant's silence prior to arrest, or after arrest if no Miranda warnings are given"); United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991) ("[T]he government may comment on a defendant's silence when it occurs after arrest, but before Miranda warnings are given."). Nor, the Supreme Court stated, does commenting on the silence of a defendant who has not been warned of his Miranda rights by a law enforcement officer or agent violate any other constitutional right. Instead, the law that the Fletcher decision clearly established is that, "[a] State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony." Fletcher, 455 U.S. at 607, 102 S.Ct. 1312.

Because the giving of Miranda warnings from an officer or agent of the state is an essential element of a Doyle violation, as Fletcher makes clear, a habeas petitioner seeking relief on that ground has the burden of proving that warnings were given. See Williams v. Allen, 598 F.3d 778, 788 (11th Cir. 2010) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation.") (alteration and quotation

5

marks omitted); Romine v. Head, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation.").

Branch failed to prove that any of his silence before taking the stand at trial came after he was given Miranda warnings. If anything, the record indicates that he was not read his Miranda warnings at any time in connection with this crime. Branch was not apprehended by law enforcement. Instead, while in Indiana he heard that police were looking for him, consulted an attorney there, and accompanied by that attorney turned himself in to the police in that state. Before Branch did so, his attorney told him not to talk with law enforcement, and he followed that advice.

When asked during cross-examination about his failure to tell his story before trial and help find the man he now said had committed the rape and murder, Branch replied: "I was advised by my attorney not to speak to law enforcement." He did not testify that he kept quiet because some officer or agent had read him his Miranda rights. Branch has never testified or even alleged that anyone ever read him his Miranda rights in connection with this crime. Nor has anyone else. One of the Florida officers who went to Indiana to transport Branch back to Florida was asked in deposition if he was present when Branch was interviewed, and he

6

answered: "Eric [Branch], to my knowledge, has never been interviewed."

The district court stated in its order that, "when Mr. Branch was eventually arrested, he of course was advised of his right to remain silent, in accordance with Miranda v. Arizona, 384 U.S. 436, 467–73, 86 S.Ct. 1602 (1966)." The court cited no part of the record for that assertion and no part of the record supports it. The court may have simply been assuming that Branch would have been read his Miranda rights because most arrestees are. But Branch was not like most arrestees. As we have just discussed, Branch was not captured in Florida. Instead, under instructions from his attorney not to talk, he turned himself in to the Indiana police where he was held until Florida officers arrived to transport him back to that state, and the only testimony on the subject indicates that Branch was never interviewed about the crime by law enforcement officers. So, the district court's finding that some law enforcement officer or agent had advised Branch of his Miranda rights not only has no basis in the record, but it also appears contrary to every indication in the record on the matter. A finding is clearly erroneous when we are left with the definite and firm conviction that it is wrong. See Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511 (1985) (stating that even where there is some evidence to support it, a finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm

7

conviction that a mistake has been committed.") (quotation marks omitted); United States v. Hogan, 986 F.2d 1364, 1372 (11th Cir. 1993) (same). After a full review of the record our conviction that the district court was mistaken is as definite and firm as it can be.

At best for Branch, the record is silent about whether any officer or agent ever read him his Miranda rights, but silence about his silence does him no good. It simply puts Branch in the same position as the habeas petitioner in the Fletcher case. See Fletcher, 455 U.S. at 605, 102 S.Ct. at 1311 ("[T]he record does not indicate that respondent Weir received any Miranda warnings during the period in which he remained silent immediately after his arrest"). And the Supreme Court held in Fletcher that a silent record was fatal to that petitioner's Doyle claim. Id. at 605, 102 S.Ct. at 1311 ("The significant difference between the present case and Doyle is that the record does not indicate that respondent Weir received any Miranda warnings during the period in which he remained silent immediately after his arrest."). It is equally fatal to Branch's Doyle claim. As a result, the adjudication of Branch's Doyle claim in the Florida Supreme Court not only did not result in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), but it resulted in a decision that was

8

entirely correct.

We need not address the basis on which the district court rejected the <u>Doyle</u> claim, which is that any error was harmless in view of the circumstances including the strength of the evidence against Branch.

The district court's judgment denying federal habeas corpus relief is AFFIRMED.